IN THE UNITED STATES DISTRICT COURT FOR
THE CENTRAL DISTRICT OF ILLINOIS

VINCENT E. STAUB,              )
                               )
        Plaintiff,             )
                               )
    v.                         )    Case No. 04-1219
                               )
PROCTOR HOSPITAL, an Illinois  )
Corporation                    )
                               )
        Defendant.             )

## ORDER

Before the Court are Defendant Proctor Hospital's Motion for Summary Judgment [Doc. #34] and Plaintiff Vincent Staub's Response [Doc. #40]; Plaintiff's Motion to Strike Sections of Affidavit of Linda Buck [Doc. #39]; and Plaintiff's Motion to Strike Exhibit 1 of Supplemental Affidavit of Linda Buck [Doc. #45].  For the reasons that follow, Defendant's motion will be denied, and Plaintiff's motions will be denied as moot.

### I.
### Background

For the purposes of this summary judgment motion, the following facts, where disputed, are considered in the light most favorable to the non-moving party.  Plaintiff Vincent Staub (Staub) has been a member of the United States Army Reserve since 1984.  Staub began work as an angiography technologist (angio tech) for Defendant Proctor Hospital (Proctor) in 1990.  He was terminated from that position on April 20, 2004.  Staub claims his termination

to be the end result of persistent discrimination on the part of his supervisors and co-workers, due to their dislike of his duties as a member of the Army Reserve and the burden that those duties placed upon the hospital.

The angiography lab at Proctor Hospital is part of the Diagnostic Imaging Department. Throughout the time period in question, the Diagnostic Imaging Department was supervised by Michael Korenchuk. The record shows that the de facto direct supervisor for the angio techs during that time was Jan Mulally. (Pl.'s Resp., Doc. #40 Ex. 5 at 7; Ex. 4 at 3-4.) Mulally was also in charge of scheduling for the department. (Id. Ex. 3 at 15.)

Staub's disciplinary record while an employee of Proctor Hospital is as follows: Staub was terminated once previously, in June 1998. This termination was for refusal to continue working past the end of his shift. (Def.'s Mot. Summ. J., Doc. #34 at 3, ¶ 14-16.) Staub filed a grievance and was reinstated pursuant to signing a document listing certain conditions. Id. On January 27, 2004, Staub was issued a Corrective Action Notice for failing to perform his duties by assisting another department. (Pl.'s Resp., Doc #40 at 5.) This notice was prepared by Jan Mulally and signed by Michael Korenchuk. (Pl.'s Resp., Doc #40 Ex. 3 at 36-38.) Leslie Sweborg, a fellow angio tech who was with Staub during the incident, received a largely identical Corrective Action Notice the following day. (Id. Ex. 3 at 39.) On April 20, 2004, after not

being able to find Staub in the Diagnostic Imaging Department, Korenchuk was advised by Vice President of Human Resources Linda Buck to terminate him. (Buck Aff., Doc #37 at 43.)  Sweborg had worked side by side with Staub that day and would have also been absent from the Department, but she was never disciplined. (Pl.'s Resp., Doc. #40 Ex. 7 at 59-60, 113 (Sweborg Dep.).)  Staub was fired in a meeting with Buck and Korenchuk later that day.

Defendant Proctor Hospital has a written policy of complying with the Uniformed Services Employment and Reemployment Rights Act (USERRA).  Despite this, Mulally, who was in charge of scheduling during Staub's tenure at Proctor, would often place Staub on the schedule when she knew that he had Reserve commitments. (Pl.'s Resp., Doc #40 at 12-13.)  Rather than removing him from the schedule, she would often force him to find his own replacement, request volunteers to fill his hours, or simply assign his hours to other angio techs.  This had the effect of breeding resentment and animosity toward Staub among his co-workers.  Id.  Mulally also called Staub's Reserve Unit several times asking them to change his drill dates so he could work at the hospital.  During one of these phone calls she became irate and swore at Joseph Abbadini, the Reservist with whom she was speaking.  Id. at 16.  Staub's supervisor Michael Korenchuk also has made negative remarks regarding Staub's military duties, and refused to give Staub additional time necessary for travel when he was training in

3

Minnesota. (Pl.'s Resp. Ex. #40 at 80.)

Mulally's animosity toward Staub is alleged to have extended to a conspiracy among hospital staff. According to Sweborg, Mulally and Angie Day attempted to recruit her to their effort to make Staub look bad, because they did not like him and wanted him to be fired. (Pl.'s Resp., Doc. #40 Ex. 7 at 12-13.) Day resigned in January 2004, after a public confrontation with Korenchuk. Day cited Staub's behavior as one of the reasons for her resignation. (Pl.'s Resp., Doc #40 Ex. 5.) Mulally later facilitated Day's rehiring to the angio lab at Proctor, seven days after Staub was terminated. (Id. Ex. 4.)

Following his termination, Staub brought this suit against Proctor, alleging, among other things, that the disciplinary actions taken against him on January 27, 2004 and April 20, 2004, and his termination from Proctor were the result of his service in the Army Reserve, in violation of the USERRA. Proctor has filed the present motion for summary judgment.

## II.
## Legal Standard

Summary judgment is to be granted where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56©. The moving

party has the burden of showing the court, through portions of the record, that no genuine issue as to any material fact exists and that they are entitled to judgment as a matter of law. <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 323 (1986). The moving party may meet this burden by showing "that there is an absence of evidence to support the nonmoving party's case." <u>Id.</u> at 325. Any doubt as to the existence of a genuine issue for trial is resolved against the moving party <u>Anderson v. Liberty Lobby</u>, 477 U.S. 242, 255 (1986); <u>Cain v. Lane</u>, 857 F.2d 1139, 1142 (7th Cir. 1988).

  If the moving party meets its burden, the non-moving party then has the burden of presenting specific facts to show that there is a genuine issue of material fact. <u>Matsushita Elec. Indus. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 586-87 (1986). Federal Rule of Civil Procedure 56(e) requires the non-moving party to go beyond the pleadings and produce evidence of a genuine issue for trial. <u>Celotex</u>, 477 U.S. at 324. Nevertheless, this Court must "view the record and all inferences drawn from it in the light most favorable to the [non-moving party]." <u>Holland v. Jefferson Nat. Life Ins. Co.</u>, 883 F.2d 1307, 1312 (7th Cir. 1989). Summary judgment will be denied where a reasonable jury could return a verdict for the non-moving party. <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248 (1986); <u>Hedberg v. Indiana Bell Tel. Co.</u>, 47 F.3d 928, 931 (7th Cir. 1995).

## III.
## Analysis

Under the USERRA, an employee must show that a protected status or activity was one of the reasons for the employer's action against him. 20 C.F.R. § 1002.22. If he can do so, the employer then has the burden to show that it would have taken the action regardless of the employee's protected affiliation or activity. Id. Among the protected activities under the USERRA is "[p]erformance of service, application for service, or obligation for service in a uniformed service." 20 C.F.R. § 1002.23.

Staub has presented evidence that the disciplinary actions taken against him were at least partially influenced by his military service. There is sworn testimony indicating a conspiracy to cause Staub to be fired from his job at Proctor. This alone does not present an issue of material fact as to the claim under the USERRA. However, a genuine issue becomes apparent once it is combined with Staub's evidence concerning the attitudes and conduct of some of the alleged conspirators in relation to his military service. In addition, while Proctor points to other military staff who have received no discipline, as well as non-military staff terminated for the same reasons they claim Staub was terminated, there is no evidence that these individuals worked in the same department and under the same supervisors as Staub. Further, Staub has presented evidence that Sweborg, a non-military

staff member working in the same department, was treated more favorably as she too was out of her work area at the time in question and was not terminated. Since Staub's claim is based on discrimination from direct supervisors and co-workers which was imputed to those who made the decision to terminate him, this distinction is important.

The question of whether Staub's termination is the result of discrimination due to his military service has been shown to be one of fact, not of law. Taking all facts in the light most favorable to the non-moving party, a reasonable jury could determine that Staub's written discipline and termination were caused at least in part by his military service, and that Proctor would not have taken such actions were it not for his military service, in violation of the USERRA. The evidence presented by the two sides indicates important factual inconsistencies which must be clarified before a jury, not simply in an exchange of memoranda.

As Defendant Proctor notes in its brief, the Seventh Circuit has stated that "[s]ummary judgment is generally improper where the plaintiff can show that an employee with discriminatory animus provided factual information or other input that may have affected the adverse employment action." Dey v. Colt Construction & Dev. Co., 28 F.3d 1446, 1459 (7th Cir. 1994). This line of reasoning looks to whether Buck or Korenchuk acted as the "cat's paw" for one of the discriminating employees. "[W]hen a biased employee makes

a discriminatory statement in the context of a plaintiff's performance review– an evaluation that may be passed along to the decision maker– the subordinate's attitudes become relevant to the discrimination calculus." Mateu-Anderegg v. Sch. Dist. of Whitefish Bay, 304 F.3d 618, 627 (7th Cir. 2002) (concurring opinion). While Plaintiff Staub has not shown a direct link between his termination and those employees he argues showed animosity toward him, he has demonstrated enough of a causal connection between the events leading to his termination and the discriminatory actions of those employees that summary judgment at this stage would not be proper.

Mulally's negative opinion of Staub's military service and the effects of that service on the hospital is well documented in the record. It is also well-documented that Mulally had a strong influence over Korenchuk's disciplinary decisions involving Staub. In at least one instance, Korenchuk signed off on a written warning to Staub prepared entirely by Mulally, with no personal knowledge of any infractions that may have transpired. According to Korenchuk, Mulally discussed with him (Korenchuk) her desire to get rid of Staub, and often complained to Korenchuk about Staub. (Pl.'s Resp., Doc #40 Ex. 3 at 17.)  Therefore, it may be the case that her animosity toward Staub was transferred to Korenchuk, who is undisputedly one of the two people who made the decision to terminate Staub.  Trone's sworn deposition also corroborates the

8

belief that Mulally seemed to want to get rid of Staub. Because of the evidence showing her dislike of Staub's military service, this general animosity towards him can be construed as discrimination based on Staub's protected status as a member of the Army Reserve.

In addition, it is reasonable that the opinions of both Buck and Korenchuk were also colored by the situation involving Angie Day. Due to her involvement in the alleged conspiracy against Staub, there is a factual question as to whether statements she gave upon her resignation were truthful, and also whether those statements tainted the decision-makers in Staub's firing with her apparent prejudices. Because she also is in the evidentiary record as having made negative statements about Staub due to his military service and how that service affected her and the hospital, there is a connection between her discrimination and this cause of action. Therefore, taking all facts in the light most favorable to Staub, his burden for making a prima facie claim under the USERRA has been met.

Proctor, under this interpretation of the facts, has not shown that Staub would have been fired regardless of his military service, which is required for a defense against this USERRA action. They dispute the vast majority of the facts in Section I. Their claim is that the hospital is in full compliance with the USERRA, and the actions taken against Staub are solely the result of his conduct during his tenure at Proctor, not having any bearing on his military service. They have supplemented that position with

9

sworn affidavits, deposition testimony from hospital personnel, and exhibits which they feel indicate the legitimate and lawful reasons for Staub's termination. However, all of this testimony has been called into question by the evidence presented by Staub. Therefore, there are several material issues of fact in play in this case, and judgment as a matter of law would be inappropriate.

Even taking into consideration the sections of the affidavit of Linda Buck [Doc. #37] and the exhibit to that document [Doc. #37 Ex. 1] that Plaintiffs have moved to strike, this Court finds that summary judgment would be inappropriate. Therefore, Plaintiff's Motions to Strike [Doc. #39 and 45] are moot.

IT IS THEREFORE ORDERED that Proctor's Motion for Summary Judgment [Doc. #34] is DENIED.

IT IS FURTHER ORDERED that Plaintiff's Motion to Strike Sections of Affidavit of Linda Buck [Doc. #39] and Plaintiff's Motion to Strike Exhibit 1 of Supplemental Affidavit of Linda Buck [Doc. #45] are denied as moot.

IT IS FURTHER ORDERED that this case is set for a final pretrial conference on September 14, 2006 at 10:30am. The Parties are to meet with Judge McDade's law clerk at 9:30am on that day to discuss jury instructions. The Parties are directed to submit a joint proposed final pretrial order on or before September 8, 2006. A jury trial date will be set during the final pretrial conference.

Entered this <u>1st</u> day of August, 2006.

s/ Joe B. McDade
JOE BILLY McDADE
United States District Judge
