UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS

Vincent E. Staub, )
          Plaintiff )
)
v. )    Case No. 04-1219
)
Proctor Hospital, )
          Defendant )

## ORDER

The parties have consented to have this case heard to judgment by a United States Magistrate Judge pursuant to 28 U.S.C. § 636(c), and the District Judge has referred the case to me. Now before the Court is the Defendant's second motion for summary judgment (Doc. #84), along with Plaintiff's motion to strike (#87) parts of a supporting affidavit filed by Defendant. As explained below, the motion to strike is moot and the motion for summary judgment is denied.

## MOTION TO STRIKE

In light of new Seventh Circuit law, Defendant sought leave to file a second summary judgment motion. The proposed Motion for Summary Judgment was correctly attached as an exhibit to the motion for leave to file, a fact that was missed by the Court when the Motion for Leave to File was allowed. In the Order granting the Motion for Leave, the Court set out two parameters for the motion: that no new facts be presented and that the motion be limited to the effect of a new case on the prior order denying summary judgment.

When the Court's attention was directed to the already-submitted Motion for Summary Judgment, the Court, in the interests of efficiency, directed the Clerk to file it, even though it did not comply with those two requirements.

Defendants' Second Motion for Summary Judgment has introduced some supplemental evidence, which is the subject of the Plaintiff's Motion to Strike. The Court has no intention of considering evidence or statements of undisputed fact that were not submitted with the first motion for summary judgment. The scope of this Order is simply to assess the impact of the new Seventh Circuit case on the law of this case and how that law was applied to the facts in the record at the time of the first motion.

To the extent that defendant's motion - and hence plaintiff's response - go beyond that scope, the Court is simply ignoring the submissions and argument. Plaintiff's motion to strike (#87) is therefore moot. It is noted, however, that the evidentiary question raised in this motion regarding Buck's supplemental affidavit may, if necessary, be raised and briefed in an appropriate motion in limine.

**BACKGROUND**

The facts of this case were set out in previous Orders and will not be repeated herein except as necessary to explain the Court's ruling. In that Order, the Court called into question Proctor's evidence about the legitimacy of the decision to terminate Staub's employment, noting that there was evidence of a conspiracy by some of his co-workers to have him fired, statements by co-workers and Mulally indicating a problem with his military service, and an instance of more favorable treatment of a non-military co-worker. The Order summarized the record as being "well documented" that Mulally had negative opinion about Staub's military service, as well noting that she possessed a "strong influence" over Korenchuk, one of the decision makers and surmising that it would be reasonable to conclude that both decision makers, Korenchuk and Buck, were "colored by the situation involving" Angie Day. The extent to which the decision to terminate Staub's employment was

2

colored by the negative attitudes of Mulally and Staub's co-workers was therefore a question of fact sufficient to defeat the summary judgment motion.

This case hinges on Plaintiff's "cat's paw" theory. Under this theory, the actions, words and motivations of employees without formal authority to materially alter the terms and conditions of a plaintiff's employment may be imputed to the employer if the employee without formal authority exercises "singular influence" over an employee who does have such power. Rozskowiak v. Arlington Heights, 415 F.3d 608, 613 (7th Cir. 2005). As applied to this case, the issue is whether the bias of non-decision maker Mulally and the co-workers may be imputed to Buck and Korenchuk, who (apparently together) possessed and exercised their authority to terminate the employment of Plaintiff. In particular, the issue is whether is whether Mulally possessed the requisite degree of "singular influence" over Buck's and Korenchuk's joint decision to terminate Plaintiff's employment.

After the Order denying the first Motion for Summary Judgment had been entered, the Seventh Circuit decided Brewer v. Bd. of Trustees of the University of Illinois, 479 F.3d 908 (7th Cir. 2007)[1]. The parties disagreed about whether Brewer changed the law in this Circuit or whether it merely clarified and summarized it. A second summary judgment motion was authorized by this Court to ascertain whether Brewer required any changes to the prior Order.

---

[1] A Petition for Writ of Certiorari in Brewer is pending as of the date of this Order. 2007 WL 1789015, June 19, 2007 (U.S.). Actually, before the Seventh Circuit decided Brewer, the Supreme Court had accepted cert in another case presenting the precise issue about the cat's paw theory as is presented in this case and as was discussed in Brewer. The instant case was stayed pending the Supreme Court's ruling. After Brewer was decided, the Coca Cola case was dismissed by the parties.

**THE BREWER CASE**

In <u>Brewer</u>, a university student/employee alleged that the University had violated Title VII when it fired him from his student job (and ultimately removed him from a master's degree program) for allegedly violating university parking requirements. Specifically, he was fired for altering a parking tag. He claimed that his supervisor had given him permission to use the tag but then, due to racial bias, failed to tell her supervisor that she had given him permission. His supervisor did not have authority to terminate his employment, so the issue was whether his supervisor's bias was attributable to the person who actually made the decision to fire him.

The Seventh Circuit continues to apply the "cat's paw" theory to employment cases. As the Court noted in <u>Brewer</u>: "In the right context, what one employee says or doesn't say about another will control an employee's wages and chances for promotion, or may even get an employee fired." 479 F.3d at 917. The requisite influence may be supplying misinformation or failing to provide relevant information to the decision maker. <u>Id.</u>

The <u>Brewer</u> Court went on to emphasize, however, that not any minimal amount of influence will do. The influence must be "singular," which the Court of Appeals defined as "so much influence as to basically be herself the true functional decision maker." <u>Id.</u>, quoting <u>Little v. Ill.Dept. of Revenue</u>, 369 F.3d 1007, 1015 (7th Cir. 2004). "The nominal decision-maker must be nothing more than the functional decision-makers' cat's paw." <u>Brewer</u>, 479 F.3d at 917-18, quoting <u>Shager v. Upjohn Co.</u>, 913 F.2d 398, 403 (7th Cir. 1990).

Proceeding from that definition of the cat's paw theory, the <u>Brewer</u> Court expounded on conduct that could be seen as sufficient to justify application of the theory. For example, where the party nominally responsible for an employment decision is, by virtue of her role in

the company, "totally dependent on another employee to supply the information" on which the decision is based, the employee responsible for supplying the information is the "true, functional decision maker." Brewer, 479 F.3d at 918. Obviously, where the decision-maker conducts only "perfunctory review" or "mere paper review" of the information provided, that review does not let the employer off the hook. Rather an "independent investigation" of that information is required. Id. at 919. As the Brewer Court explained:

> where a decision maker is not wholly dependent on a single source of information, but instead conducts its own investigation into the facts relevant to the decision, the employer is not liable for an employee's submission of misinformation to the decision maker. It does not matter that in a particular situation much of the information has come from a single, potentially biased source, so long as the decision maker does not artificially or by virtue of her role in the company limit her investigation to information from that source.

Id. at 918.

In Brewer, the biased supervisor withheld information from the decision maker. The employee had failed to bring his side of the story to the decision maker. The decision maker examined the allegedly-altered document and found that it had in fact been altered. On that basis, the employee's employment was terminated. The Seventh Circuit found that the employer's investigation of the facts was sufficient to cut the link between the biased supervisor's apparent racism and the decision that was made by the higher-level decision-maker. Id. at 918. See also, Mullikin v. Indiana-Kentucky Elec. Corp., 2007 WL 1464256, Apr. 25, 2007 (S.D. Ind.)(Decision maker interviewed witnesses and plaintiff about incident, thereby satisfying Brewer's requirement of an independent investigation). Cf. Tate v. Executive Management Services, Inc., No. 105-CV-47-TS 2007 WL 1650410, *4, June 4, 2007 (N.D. Ind.)(sufficient evidence to support the jury's finding that decision maker acted as rubber stamp for biased employee, where there were disputed facts about whether there had

been an investigation at all and where employee testified he was not allowed to speak with decision maker about allegations of misconduct).

Finally, the Brewer Court noted that, while a "lesser degree of influence" might be sufficient in other contexts (such as formal performance evaluations), such minimal influence is not sufficient in the context of discipline for misconduct. In such situations, such as where a biased employee has leveled false charges of misconduct, the employer is not liable under Title VII so long as an independent investigation is conducted before discipline is imposed. Id. at 920.

The Seventh Circuit concluded its discussion by acknowledging that some of its prior "cat's paw" cases were not completely clear, and by rejecting those earlier cases which had suggested or held that any amount of influence, no matter how small or attenuated and regardless of investigation by the employer, is sufficient to impose liability on the employer.

## DISCUSSION

The case at bar is about discipline for misconduct: the stated reason for termination of Staub's employment was his failure to comply with departmental regulations. The only issues for purposes of this motion is whether Mulally, who was not the decision-maker, possessed the requisite degree of "singular influence" over Buck and Korenchuk, the decision-makers and whether the requisite investigation was conducted.

This Court has previously held that the evidence would support a conclusion that Mulally's influence was "strong" and that evidence suggests that both Buck and Korenchuk could have been colored by Day's expressions of dissatisfaction with Staub. The degree of Mulally's influence is also suggested by the fact that after Staub was fired Mulally managed

to have Day re-hired. That evidence is enough at this stage to create issues of fact which only a jury can resolve.

Not considered by the Court in the earlier Order, however, was evidence of whether an investigation was conducted by either one of the decision-makers and, if so, what constituted that investigation. The information provided by Mulally was reflected at least to some degree in Staub's personnel file: Mulally had prepared the disciplinary notice and it was in the file. While it appears that Buck reviewed Staub's personnel file, there is nothing in the record to indicate whether either Korenchuk or Buck obtained any knowledge independent of what was provided by Mulally, except for the information provided by Day. And there is no evidence that either Day or Korenchuk investigated Day's statements. Buck appears to have simply relied on the material in Staub's personnel file and on Korenchuk's inability to locate Staub on the date in question.

I find that there remains a question of fact about the degree of Mulally's influence and the adequacy of the investigation, if any, conducted by Korenchuk and Buck before Staub's employment was terminated. Accordingly, the motion for summary judgment is denied in its entirety. This case is set for a supplemental scheduling conference on August 21, 2007 at 10:30 a.m. at which time dates for final pretrial conference and trial will be set.

ENTER this 16th day of August, 2007.

s/ John A. Gorman

JOHN A. GORMAN
UNITED STATES MAGISTRATE JUDGE