UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS

Vincent E. Staub, )
            Plaintiff )
)
v. ) Case No. 04-1219
)
Proctor Hospital, )
            Defendant )

**OPINION and ORDER**

The parties have consented to have this case heard to judgment by a United States Magistrate Judge pursuant to 28 U.S.C. § 636(c), and the District Judge has referred the case to me. Now before the Court are the Defendant's post-trial motion for judgment as a matter of law or for a new trial (Doc. #110), the Plaintiff's motion for attorney's fees (Doc. #117), and the Plaintiff's Bill of Costs(Doc. #116) with objections (Doc. #124). As explained more fully below, the motion for judgment as a matter of law or for a new trial is denied, the motion for attorney fees is granted in part and denied in part, and the Bill of Costs is modified.

**MOTION FOR JUDGMENT AS A MATTER OF LAW OR FOR NEW TRIAL**

This case was tried to a jury, and a verdict in favor of Plaintiff in the amount of $57,640.00 was rendered on January 10, 2008. Defendant re-raises some of the same legal questions that were thoroughly considered in this Court's order denying summary judgment (See Order, Doc.#90), as well as challenging the sufficiency of the evidence put forth by the Plaintiff during the trial. In addition, Defendant discusses a recent (i.e. post-trial) Seventh Circuit case involving the core legal doctrine in this case, the "cat's paw" theory. Metzger v. Illinois State Police, 519 F.3d 677 (7th Cir. 2008).

On a motion for judgment as a matter of law under Fed.R.Civ.P. 50 or for a new trial under Fed.R.Civ.P. 59, a court must determine whether the evidence presented at trial, when viewed in the light most favorable to the non-moving party, is sufficient to support the verdict. Mathur v. Bd. of Trustees of Southern Illinois University, 207 F.3d 938 (7th Cir. 2000). Although a mere scintilla of evidence is not enough to sustain a verdict, the court is not to substitute its view of contested evidence for the jury's view. Id. A jury verdict will not be set aside if, viewing the evidence in the light most favorable to the prevailing party, there exists within the record any reasonable basis to support that verdict; issues of credibility and weight of evidence are left to the jury. Kapelanski v. Johnson, 390 F.3d 525, 530 (7th Cir. 2004); Harbor Motor Co. v. Arnell Chevrolet-GGeo, Inc., 265 F.3d 638 (7th Cir. 2001).

The legal questions raised by Defendant in this motion are no different than those previously considered, and nothing in the Defendant's motion convinces me that resolution or application of the legal questions was erroneous in any way. With only one exception, those legal issues will not be revisited here. That exception is the Metzger case and its impact, if any, on those legal questions.

After careful review, I conclude that Metzger[1] does not change the law that was applied in this case. First and foremost, Metzger involved review of an order on a motion for summary judgment; it was not a post-trial case, so its discussion of applicable standards of proof offers no insight into the standards that govern the motion now before this Court. Nor does Metzger reveal any errors that were made at the pre-trial or jury instruction phases of this case. As this Court's Order on summary judgment found, there were several key issues that could not be decided on

---

[1] Metzger's discussion of the cat's paw theory was *dicta* and hence would not overrule Brewer in any event. Given Defendant's reliance on that discussion, I have nonetheless carefully considered that discussion.

2

summary judgment because there existed genuine and significant disputes of fact, necessitating a trial and resolution of those facts by the jury. Given the divergence between the procedural posture of Metzger and that in the case before this Court, I do not see that Metzger sheds any light on how the jury should have resolved such disputes of fact.

Nor did Metzer change the law of the cat's paw theory in any way. Metzger cites with approval Brewer v. Bd. of Trustees of University of Illinois, 479 F.3d 908 (7th Cir. 2007). Metzger, 519 F.3d at 682. Brewer is the case that guided this Court not only in its resolution of the summary judgment motion but also in preparing the substantive jury instructions that were given. Metzger did not purport to change any aspect of Brewer, and nothing in Defendants' motion convinces me that application of Brewer in the Order on summary judgment or as reflected in the jury instructions was incorrect.

Defendant emphasizes that aspect of Metzger in which the employer's independent investigation was sufficient to belie any claim of "cat's paw." Whether the investigation conducted by Defendant was sufficient to meet the standard set forth in Brewer was held by this Court to be a question of fact, and it was one of the issues presented to the jury. In this case, the evidence about the investigation is sufficient to support the jury's verdict under both Brewer and Metzger.

First, the evidence at trial reveals a significant factual difference between Metzger and the case at bar. In Metzger, the employer's original decision and its reconsideration of that decision were both reduced to writing; the reconsideration clearly stated four independent sources of information that supported the decision. In the case at bar, however, the testimony and documentation about who said what to whom was hotly contested. At this procedural juncture, that contested evidence must be considered in the light most favorable to Staub, not Proctor. As the Plaintiff properly comments,

3

"The issue for the Court to consider is not what conclusions might be drawn solely considering Defendant's evidence, but whether evidence was presented from which the jury could have reasonably concluded that Defendant did not conduct an independent investigation, either before or after termination."  See also, Tate v. Executive Mgt. Svcs., Inc., - F. Supp. 2d -, 2007 WL 1650410 (N.D. Ind. 2007).  There was sufficient evidence for the jury to have determined that there was no truly independent investigation here.  Moreover, given the testimony about Mike Korenchuk's role in both the original termination and the reconsideration, it was not inherently unreasonable or improper for the jury to have disbelieved crucial parts of testimony offered by the two decision makers, Linda Buck and Mike Korenchuk.  Once again, issues of credibility are for the jury.  Given the conflicting testimony, there was certainly a basis for the jury to have disbelieved or discounted at least some of the testimony proffered by Defendant.  Once Buck's and/or Korenchuk's testimony was deemed suspect as to one issue, the jury could reasonably have disbelieved even uncontested testimony as not worthy of credence..  See, Harvey v. Office of Banks and Real Estate, 377 F.3d 698 (7th Cir. 2004)(where decisionmaker is impeached, it is jury's prerogative to disbelieve other uncontradicted testimony); Emmel v. Coca-Cola Bottling Co. of Chicago, 95 F.3d 627 (7th Cir. 1996)(same).  Viewing the evidence in the light most favorable to the Plaintiff, I find a sufficient basis for the verdict.

     I reject Defendant's characterization of Plaintiff's evidence as a "scintilla" and of the remarks as "stray."  There were a number of remarks, some of them temporally proximate to the discipline originally imposed on Plaintiff and others temporally proximate to his discharge.  There were inconsistencies between the facts as various witnesses recalled them and as set forth in the documents related to the discipline.  While there was no smoking gun, there was enough evidence

to defeat summary judgment and there was enough evidence to send the case to the jury. The only way to overturn the jury's verdict here would be to substitute my judgment for the jury's on issues of credibility and weight, something I cannot and will not do.

I therefore conclude that there was sufficient evidence put on by the Plaintiff to sustain the jury's verdict. Defendant's motion for judgment as a matter of law or for a new trial is therefore denied.

## MOTION FOR ATTORNEY FEES

Vincent Staub has moved for his attorney's fees in the amount of $145,271.00. The motion is supported by affidavits of the two attorneys who worked on this case, as well as by detailed time records.

A plaintiff who prevails under USERRA may be awarded attorney fees as well as reasonable costs[2]. A "prevailing party" for purposes of attorneys' fees requires that the plaintiff have succeeded "on any significant issue in litigation which achieves some of the benefit the parties sought in bringing suit." Hensley v. Eckerhart, 461 U.S. 424, 433 (1983, quoted in Farrar v. Hobby, 506 U.S. 103, 109 (1992).

Defendant does not dispute that Plaintiff is a prevailing party and hence is entitled to fees, and I find that Staub is a "prevailing party" for purposes of an award of attorney's fees.

Defendant does dispute the amount sought by Plaintiff. There 12 factors that have been identified by the Supreme Court as relevant to determining the proper amount of a fee in a civil rights suit. Those factors are: (1) the time and labor required; (2) the novelty and difficulty of the issues; (3) the skill requisite to perform the legal service properly; (4) preclusion of employment by the

---

[2]Costs are discussed in the section below.

attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or by circumstances; (8) the amount involved and the results imposed; (9) the experience, reputation and ability of the attorneys; (10) the undesirability of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases. Hensley, 461 U.S. at 430 n.3.

Once civil rights litigation "materially alters the legal relationship between the parties, the degree of the plaintiff's overall success is "the most critical factor" in determining the reasonableness of a fee award. Hensley, 461 U.S. at 424; see also Farrar v. Hobby, 506 U.S. 103 (1992)(relationship between the fees sought and the degree of success attained must be considered). If "a plaintiff has achieved only partial or limited success, the product of hours reasonably expended on the litigation as a whole times a reasonable hourly rate may be an excessive amount." Hensley, 461 U.S. at 436. On the other hand, where a plaintiff "substantially advanced their clients' interests by obtaining a significant concession, no reduction in fees was necessary. Id.

In Hensley, the Court reviewed the varying standards applied by various courts to determine the proper amount of fees when a plaintiff achieved less than total recovery. One significant distinction made was the degree to which the unsuccessful claim were based on different facts and legal theories than the successful claims. "Where a plaintiff has obtained excellent results, his attorney should recover a fully compensatory fee. Normally this will encompass all hours reasonably expended on the litigation ... In these circumstances the fee award should not be reduced simply because the plaintiff failed to prevail on every contention raised in the lawsuit." Hensley, 461 U.S. at 435.

The Hensley Court also noted the difficulty and complexity of many civil rights suits involving "challenges to institutional practices or conditions", commenting:

> This type of litigation is lengthy and demands many hours of lawyers' services. Although the plaintiff often may succeed in identifying some unlawful practices or conditions, the range of possible success is vast. That the plaintiff is a "prevailing party" therefore may say little about whether the expenditure of counsel's time was reasonable in relation to the success achieved."

Id.

Defendant argues that there were substantial issues on which Plaintiff did not prevail. Specifically, Defendant points out that the original complaint in this case included two state law tort claims, (retaliatory discharge against Proctor and tortious interference against Jan Mulally). This Court[3] declined to exercise supplemental jurisdiction over those two counts because of the novelty and complexity of the state law issues they raised. Those two counts were therefore dismissed without prejudice. Plaintiff refiled those claims in state court where they are still pending. The two state claims each pray for $250,000. According to Defendant, Plaintiff cannot prevail on those claims because the jury specifically found that Proctor did not willfully violate USERRA, and willfulness is an element of each of the two tort claims.

It must first be noted that the jury was not asked to consider whether Jan Mulally's conduct was willful, so the claim against her is not barred by the verdict in this case, which found that Proctor Hospital's conduct was not willful.

More importantly, in the case at bar the facts underlying the federal USERRA claim and the state law claims were the same. Had those claims remained in this suit, it would have been impossible to separate out most of the work done on those claims from the work on the USERRA

---

[3] The Order was entered by Judge McDade on January 20, 2005, prior to the parties' consent (on January 23, 2007) to Magistrate Judge jurisdiction in this matter.

claim. It is also important to note that dismissal of the state law claims came relatively early in the case[4], so the bulk of the work accomplished related only to the claim that was ultimately successful. In this case, counsel's work was devoted to the litigation as a whole, and dividing out some of the hours is neither practicable nor necessary.

Moreover, as noted above, the degree of success attained is only one factor to be considered when evaluating a request for fees. The significance of the legal issue and the public purpose may also be considered, and in this case, I deem both of those factors to outweigh any possible reduction for less than total success. It is also impossible not to notice that this case took from June of 2004 to January of 2008 from onset to verdict. Certainly the length of time this case remained pending - through no fault of counsel, I might add - impacted the time available for Plaintiff's counsel to devote to other matters. Finally, as both the Court and counsel learned during this case, the legal issues were not entirely clear-cut and indeed it became necessary to revisit those issues due to modifications in the case law the governed the case.

For each of these reasons, I find that a general reduction of fees is not called for in this case. Defendant also raises two specific objections to fees. First, Defendant argues that one dispute that arose during this case - the ramifications of the litigation on Plaintiff's wife, who was a nursing student - should not be included in any fee award. I agree. While it is true that the dispute arose as a direct result of this litigation, the dispute was wholly removed from the merits of the litigation, and its resolution had minimal effect if any on the outcome of this litigation. I do not believe fees for time spent by Plaintiff's counsel on this dispute are recoverable, and therefore reduce Plaintiff's prayer by $3,530.

---

[4]The case was filed on June 30, 2004. Less than 7 months later, the state law claims were dismissed without prejudice.

Defendant next disputes the hourly rate sought by one of Plaintiff's attorneys, who billed at $175 per hour despite being a 2007 law school graduate, a rate Defendant asserts is excessive for this community. In a contingent fee case, such as this one, a higher rate may be charged. I do not find the $20 hourly difference between Plaintiff's associate attorney and Defendant's associate attorney to be problematic given that factor.

Defendant raises no other objections to the petition for fees. Accordingly, the motion for attorney fees is granted as follows: attorney's fees are awarded in the amount of $132,296.00 less $3530, for a total of $128,766.

## BILL OF COSTS

Plaintiff seeks costs in the amount of $2,400.02. This amount includes online research ($133.23), and copies, fax and postage for attorney Mike Gifford ($98.60). Defendant objects to these costs as not recoverable under Rule 56.

I agree that these costs do not fall within costs which may be assessed under 29 U.S.C. § 1920. Accordingly, the costs are reduced to $2,178.19.

## CONCLUSION

Defendant's motion for judgment as a matter of law or for a new trial [#110] is denied. Plaintiff's motion for attorney's fees [#116] is allowed; fees in the amount of $128, 766.00 are awarded. Costs are assessed in favor of plaintiff in the amount of $2,178.19. The Clerk is directed to amend the judgment to reflect this fees and costs as stated herein.

ENTERED ON  May 7, 2008

s/ John A. Gorman

JOHN A. GORMAN
UNITED STATES MAGISTRATE JUDGE